Felipe Hernández Ortiz, recurrente, *v.* El Registrador de la Propiedad de Bayamón, recurrido.

Núm. 1197.—*Sometido:* Diciembre 9, 1946. *Resuelto:* Enero 28, 1947.

*Luis Vizcarrondo,* abogado del recurrente; el registrador recurrido compareció por escrito.

El Juez Asociado Señor Todd, Jr., emitió la opinión del tribunal.

El 4 de octubre de 1928 el márshal de la Corte de Distrito de San Juan en subasta celebrada en procedimiento

ejecutivo hipotecario adjudicó una finca en pago parcial de la deuda reclamada por el acreedor ejecutante Felipe Hernández Ortiz. Dieciocho años después el Sr. Hernández solicitó del Registrador de la Propiedad de Bayamón inscribiera dicha finca a su favor y acompañó a su solicitud copias certificadas de las actuaciones habidas en la corte en relación con el ejecutivo hipotecario y el registrador denegó la inscripción solicitada a virtud de la siguiente nota:

"DENEGADA la inscripción del precedente documento con vista de otros, en cuanto a la finca de cinco cuerdas, única de que se solicita incripción, por los siguientes fundamentos:

"1. Porque para inscribir la adjudicación de una finca adquirida en subasta a virtud de ejecución de hipoteca se requiere escritura pública según lo determina la sección quinta de la Ley del 9 de marzo de 1905, pág. 212.

"2. Porque el crédito hipotecario ejecutado ascendía a $446.70 y según la inscripción primera de esta finca, cuya inscripción comprende una venta y la hipoteca objeto de ejecución, esta finca procede de otra inscrita en los libros de Río Piedras que está afecta a créditos hipotecarios preferentes, cosa ésta que se reconoce en el edicto de subasta, y fué adjudicada al ejecutante, que resultaba ser acreedor posterior, por sólo $250 en perjuicio de los acreedores preferentes y en violación de lo dispuesto en el tercer párrafo del artículo 128 de la Ley Hipotecaria.

"3. Porque a pesar de que según la inscripción tercera de esta finca practicada el 15 de febrero de 1929 el crédito de $446.70 que motivó la adjudicación de este inmueble a favor de Felipe Hernández Ortiz había sido cedido por éste a Ramón Luis Soldevila desde el 14 de julio de 1928 a virtud de la escritura núm. 14 otorgada ante el Notario Rafael Muñoz Santaella, y a pesar de disponer el artículo 152 de la Ley Hipotecaria que el cesionario se subrogará en *todos* los derechos del cedente, dicho cedente asistió a la subasta y se hizo adjudicar la finca a su favor.

"Se ha tomado anotación preventiva por 120 días a favor del señor Felipe Hernández Ortiz al folio 87 vuelto del tomo 7 de Guaynabo, finca núm. 292, anotación letra 'C', Bayamón, a 12 de septiembre de 1946."

Sostiene el recurrente que de acuerdo con el párrafo primero del artículo 3 de la Ley Hipotecaria(¹) complementado por el primer párrafo del artículo 51 del Reglamento,(²) el certificado del acta de subasta expedido por el márshal en el ejecutivo hipotecario es un documento auténtico expedido por autoridad judicial y que no es requisito indispensable que dicho funcionario otorgue una escritura pública para poderlo inscribir.

Arguye el registrador recurrido que de acuerdo con el artículo 5 de la Ley "Para reformar los artículos 94, 152, 234, 295 y 302 del Código de Enjuiciamiento Civil y para derogar los artículos 259 a 266 y todos los demás del mismo en cuanto se refiere a la redención de propiedad y para otros fines," aprobada el 9 de marzo de 1905, el márshal debió otorgar escritura pública de la venta en ejecución y presentar ésta con los demás documentos para su inscripción.

No obstante el laborioso esfuerzo hecho por el recurrente para demostrar que procedía la inscripción creemos que el registrador tiene razón.

El artículo 5 de la ley de 9 de marzo de 1905 (Código de Enjuiciamiento Civil, pág. 120), dispone lo siguiente:

"En los casos en que se venda en pública subasta por el márshal u otro funcionario debidamente autorizado una propiedad inmueble en virtud de ejecución u orden de venta librada por una corte de justicia, deberá dicho márshal o funcionario otorgarle al comprador escritura pública en debida forma de tal propiedad abonando dicho comprador el importe de tal escritura."

En el caso de *Sucesión Chavier* v. *El Municipio de Adjuntas,* 13 D.P.R. 342, en el cual se alegó que una escritura

---

(¹)El artículo 3 de la Ley Hipotecaria lee como sigue:

"Para que puedan ser inscritos los títulos expresados en el artículo anterior, deberán estar consignados en escritura pública, ejecutoria o documento auténtico, expedido por Autoridad judicial, o por el Gobierno o sus agentes en la forma que prescriban los reglamentos."

(²)El primer párrafo del artículo 51 del Reglamento dispone:

"Se considerarán documentos auténticos para los efectos de la ley los que, sirviendo de títulos al dominio o derecho real, estén expedidos por el Gobierno o por autoridad o funcionario competente para darlos, y deban hacer fe por sí solos."

de adjudicación presentada como prueba era nula porque la
venta judicial a que se refería aparecía otorgada el 28 de
septiembre de 1904 por el Juez de la Corte de Distrito de
Ponce sin que tuviera la representación legal ni consensual
de los vendedores, toda vez que para dicha fecha regía ya
el actual Código de Enjuiciamiento Civil y la ley creando
el cargo de márshal del distrito y definiendo sus deberes
aprobada el diez de marzo de 1904, después de citar el
artículo 5 de la ley de 9 de marzo de 1905, supra, se resol-
vió que esta última ley no estaba vigente en la fecha en que
se otorgó la escritura de adjudicación y por tanto no podía
tener aplicación. Empero, también se resolvió lo siguiente:

"La ley de nueve de marzo de 1905 para reformar los artículos
94, 152, 234, 295 y 302 del Código de Enjuiciamiento Civil y para
derogar los artículos 259 a 266 y todos los demás del mismo, en
cuanto se refieran a la redención de la propiedad y para otros fines,
fué la que en su artículo 5º. establece que en los casos en que se
venda, en subasta pública por el márshal u otro funcionario debida-
mente autorizado, una propiedad inmueble, en virtud de ejecución
u orden de venta librada por una corte de justicia, deberá dicho
márshal o funcionario otorgar al comprador escritura pública en
debida forma de tal propiedad, abonando dicho comprador el importe
de tal escritura; pero esa ley de nueve de marzo de mil novecientos
cinco no estaba vigente en la fecha en que se otorgó la escritura de
adjudicación de que se trata, y por tanto, no podía tener aplicación,
como tampoco podía tenerla el artículo 259 del Código de Enjuicia-
miento Civil, por la razón de que no habiendo hecho la venta el
márshal, no podía expedir el certificado de la misma a que dicho
artículo se refiere.

"Aun más, con arreglo al procedimiento civil actual, las atribu-
ciones del márshal emanan de la orden de ejecución que se libra
por la corte. En cumplimiento de esa orden, el márshal subasta los
bienes, los trasmite al mejor postor *y otorga el correspondiente título
de propiedad;* pero no habiendo orden de ejecución al márshal, como
no la hubo en el procedimiento sumario que terminó por la escri-
tura de adjudicación de que se trata, carecía de atribuciones el már-
shal para otorgar dicha escritura, y sólo a la Corte de Distrito de
Ponce, en representación de los ejecutados por ministerio de la ley
incumbía su otorgamiento." (Bastardillas nuestras.)

El artículo 259 del Código de Enjuiciamiento Civil antes de ser derogado por la ley de 1905 disponía que en los casos de venta de propiedad inmueble a virtud de orden de ejecución "el oficial (márshal) deberá otorgar al comprador un certificado de venta." Al derogarse dicho artículo y aprobarse el artículo 5 por la ley de 1905 se dispuso expresamente que el márshal en dichos casos "deberá" otorgarle al comprador escritura pública en debida forma. Desde dicha fecha ésta ha sido la práctica seguida y ha sido a virtud de la escritura otorgada por el márshal que el comprador ha inscrito su título en el registro de la propiedad correspondiente.

Arguye el recurrente que la ley de 1905 no puede tener el efecto de enmendar la Ley Hipotecaria y su Reglamento y que de acuerdo con los artículos 3 de dicha ley y 51 del Reglamento, supra, procedía la inscripción a virtud del certificado del acta de subasta expedido por el márshal. No tiene razón. El artículo 5 de la ley de 1905, supra, no es una enmienda a la Ley Hipotecaria o del Reglamento sino que sencillamente eliminó la facultad que antes tenía el márshal para expedir el certificado de venta judicial y le impuso el deber de otorgar una escritura pública con cargo al comprador.

No erró, pues, el registrador en el primer motivo expuesto en su nota denegatoria y tampoco en los motivos segundo y tercero ya que, si de la inscripción tercera de la finca en el registro aparece que el recurrente, acreedor ejecutante, había cedido a un tercero su crédito tres meses antes de efectuarse la subasta, el cesionario se había subrogado en todos los derechos del cedente de acuerdo con el artículo 152 de la Ley Hipotecaria y el recurrente no tenía derecho a ejecutar el crédito que había cedido.

Asimismo, si de la inscripción de la finca aparecía que pesaba sobre ella una hipoteca anterior por $800 de principal más intereses al 1 por ciento mensual y $100 para costas a la que se ejecutaba, hecho que aparecía también de los

868

edictos publicados, el márshal debió haber declarado desierta la subasta por los $250 ofrecidos, los cuales no cubrían dicho crédito anterior, todo ello de acuerdo con el artículo 128 de la Ley Hipotecaria que dispone que "Cuando se subaste la finca a .instancia de un segundo o posterior acreedor hipotecario o de acreedores comunes, se declarará sin efecto tal subasta si no se ofrece cantidad suficiente para pagar, con los intereses que consten en el Registro, todos los créditos anteriormente inscritos. . . . "

*Debe confirmarse la nota recurrida.*